No. 23-30497

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

FAITH CROCKER, DAVID J. SCHADWINKEL, IAN R. MCHALEY,
CHRISTOPHER F. DUFF, BYRON O. STARKS, JR.,
WAYNE E. JOHNSON, MENDELL L. POTIER
*Plaintiffs-Appellants*,

*v.*

LLOYD AUSTIN; UNITED STATES DEPARTMENT OF DEFENSE; FRANK
KENDALL, III; ROBERT I. MILLER; RICHARD W. SCOBEE
*Defendants-Appellees.*

On appeal from the United States District Court
for the Western District of Louisiana, No. 5:22-CV-757

**Opening Brief for Plaintiffs-Appellants**

James Baehr
Sarah Harbison
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
sarah@pelicaninstitute.org
james@pelicaninstitute.org

November 16, 2023                 *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellants**: Faith Crocker, Christopher F. Duff, Wayne E. Johnson, Ian R. McHaley, Mendell L. Potier, David J. Schadwinkel, and Byron O. Starks, Jr.

**Defendants-Appellees:** Lloyd J. Austin, III, Frank Kendall, III, Robert I. Miller, Richard W. Scobee.

**Counsel for Plaintiffs-Appellants:** James Baehr and Sarah Harbison from the Pelican Institute for Public Policy represent Plaintiffs-Appellants.

**Counsel for Defendants-Appellees:** The U.S. Department of Justice represents the Defendants-Appellees: Sarah Jane Clark and Jennifer B. Frederick

s/ *James Baehr*
James Baehr
*Counsel of Record for*
*Plaintiffs-Appellants*

Dated: November 16, 2023

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs-Appellants request oral argument. The importance of the issues – the proper interpretation of military abstention doctrines in this Circuit and the application of the mootness doctrine in the religious liberty arena – and the complexity of the pertinent case law suggest that oral argument will be helpful to the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..........................................i

STATEMENT REGARDING ORAL ARGUMENT ...........................................ii

TABLE OF CONTENTS ...............................................................iii

TABLE OF AUTHORITIES..............................................................iv

JURISDICTIONAL STATEMENT .......................................................8

STATEMENT OF THE ISSUES .........................................................8

STATEMENT OF THE CASE ...........................................................9

SUMMARY OF THE ARGUMENT ....................................................16

ARGUMENT...........................................................................17

   I.  STANDARD OF REVIEW .......................................................17

   II. APPELLANT STARKS' CLAIMS ARE JUSTICIABLE BECAUSE THE RELIGIOUS FREEDOM RESTORATION ACT STATUTORILY SUPERSEDED *MINDES* ABSTENTION.................................18

   III.APPELLANTS' CLAIMS ARE NOT MOOT BECAUSE THE COURT CAN STILL GRANT "EFFECTUAL RELIEF."......................................22

      a.  The Court Can Provide "Effectual Relief" Because it Can Remedy the Past Harm to Appellants' Livelihoods and Careers............................23

      b.  The Court Can Provide "Effectual Relief" by Declaring Unconstitutional Appellees' "Vaccination Policies," Including the Sham Religious Accommodation Process that Continues to Harm Appellants. ...........................................................................25

   IV. MOOTNESS EXCEPTIONS APPLY ......................................29

      a.  The "Collateral Consequences" Exception Applies. ...........................29

      b.  The Appellees' Challenged Conduct is Capable of Repetition Yet Evades Review. .......................................................................32

      c.  The Voluntary Cessation Exception Applies.....................................34

CONCLUSION.......................................................................35

CERTIFICATE OF SERVICE......................................................36

CERTIFICATE OF COMPLIANCE...............................................37

# TABLE OF AUTHORITIES

## Cases

*A. Philip Randolph Inst. v. Husted*, 838 F.3d 699 (6th Cir. 2016) ........................ 28

*Abbott v. Biden*, 70 F.4th 817 (5th Cir. 2023) ............................................. 1, 21, 22

*Adair v. Eng.*, 183 F. Supp. 2d 31 (D.D.C. 2002) ........................................... 12, 14

*Air Force Officer v. Austin*, 588 F. Supp. 3d 1338 (M.D. Ga. 2022) .................... 18

*Already, L.L.C. v. Nike, Inc.*, 568 U.S. 85 (2013) ............................................... 15

*Alwan v. Ashcroft*, 388 F.3d 507 (5th Cir. 2004) ................................................. 23

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) .................................................... 11

*Bazzrea v. Mayorkas, No. 3:22-cv-265, 2023 U.S. Dist. LEXIS 101876 (S.D. Tex.*
    *June 12, 2023)* ................................................................................................ 20

*Beaulieu v. City of Alabaster*, 454 F.3d 1219 (11th Cir. 2006) ............................ 12

*Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016) ..................................................... 24

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) .................. 12

*Bowman v. Schwarzenegger*, No. CIV S-07-2164 FCD KJM P, 2009 U.S. Dist.
    LEXIS 24678 (E.D. Cal. Mar. 23, 2009) ...................................................... 24

*Chafin v. Chafin*, 568 U.S. 165 (2013) ................................................................. 15

*City of Mesquite v.*, 455 U.S. at 288-89 ............................................................... 28

*Ctr. for Individual Freedom v. Tennant*, 706 F.3d 270 (4th Cir. 2013) ............... 24

*Dailey v. Vought Aircraft Co.*, 141 F.3d 224 (5th Cir. 1998) ............................... 23

*Dean Foods Co. v. Tracy*, 990 F. Supp. 646 (W.D. Wis. 1997) ........................... 24

*Dilley v. Alexander*, 603 F.2d 914 (D.C. Cir. 1979) ...................................... 13, 14

*Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022) .................................................. 22

*Doster, et al v. Kendall, et al*, 22-84 (S.D. Ohio 07/14/2022) ................................ 8

*Downen v. Warner, 481 F.2d 642 (9th Cir. 1973)* ................................................ 13

*Dunn v. Austin,* No. 22-15286 (9th Cir. Feb. 21, 2023) ....................................... 10

iv

*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007) ............................................ 25

*Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561 (1984) ....................... 23

*First Nat'l Bank v. Bellotti*, 435 U.S. 765 (1978) ........................................... 25, 26

*Foster v. NFN Warden, 31 F.4th 351 (5th Cir. 2022)* ..................................... 23, 25

*Frank Kendall, Sec'y of the Air Force v. Hunter Doster*, No. 23-154, 2023 U.S. S. Ct. Briefs LEXIS 3186 (Oct. 18, 2023) ............................................................. 17

*Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824 (5th Cir. 2023) ....... 6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167 (2000) ..... 27

*Home Builders Ass'n v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998) ............. 11

*Honig v. Doe*, 484 U.S. 305 (1988) ....................................................................... 26

*Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016) ................... 25

*Milwaukee v. Ill.*, 451 U.S. 304, 314, 101 S. Ct. 1784, 68 L. Ed. 2d 114 (1981) .. 12

*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) .......................................... passim

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007) ..... 28

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012) ................................................................................................................ 13

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) . 28

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............................... 10, 11

*Ramsek v. Beshear*, 989 F.3d 494 (6th Cir. 2021) ............................................... 24

*Rigdon v. Perry*, 962 F. Supp. 150 (D.D.C. 1997) ............................................... 17

*Roe v. Wade*, 93 S. Ct. 705 (1973) ...................................................................... 25

*Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020) ................................... 26

*S. Pac. Terminal Co. v. Interstate Commerce Com.*, 219 U.S. 498 (1911) ........... 25

*Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) ................ 24

*Sibron v. New York*, 392 U.S. 40 (1968) .............................................................. 23

*Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022) ............................................... 19, 20

*Singh v. Berger*, No. 22-5234, 2022 U.S. App. LEXIS 35598 (D.C. Cir. Dec. 23, 2022) ............................................................................................... 20

*Singh v. Carter*, 168 F. Supp. 3d 216 (D.D.C. 2016) ...................................... 12, 13

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ......................... 27, 28

*Turner v. Rogers*, 564 U.S. 431 (2011) ................................................................ 25

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) ........................ passim

*U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022) ............. 18

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022) ..................................................... 15

## Statutes

10 U.S. Code § 843 .......................................................................................... 22, 24

28 U.S.C. §§ 1331, 1343 ..................................................................................... 1

42 U.S.C. § 1988 .................................................................................................. 6

## Other Authorities

Applying for Benefits and Your Character of Discharge, Veterans Benefits Administration, https://www.benefits.va.gov/benefits/character_of_discharge.asp ..................... 7

Air Force Instruction 36-3208, Administrative Separation of Airmen (July 9, 2004), https://www.mcmilitarylaw.com/documents/afi36-3208.pdf. ................. 7

Leo Shane III, *Troops Who Refused COVID Vaccines Still Could Face Punishment*, MILITARY TIMES (Feb. 28, 2023), https://www.militarytimes.com/news/coronavirus/2023/02/28/troops-who-refused-covid-vaccines-still-could-face-punishment/ ....................................... 21

## Rules

Federal Rule of Civil Procedure 12(b)(1) .................................................. 8, 10, 11

Federal Rule of Civil Procedure 12(b)(6) .................................................. 8, 10, 11

*U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 675 (5th Cir. 2023) ........................ 10

## JURISDICTIONAL STATEMENT

The district court had jurisdiction because Appellants allege violations of federal law and constitution. 28 U.S.C. §§ 1331, 1343. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal arises from a final judgment in favor of Appellees. The district court entered final judgment on June 22, 2023, and Appellants filed a timely notice of appeal on July 21, 2023 (ROA.540, ROA.559-560).

## STATEMENT OF THE ISSUES

This case presents important questions left open by this Court's recent decisions in *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) and *Abbott v. Biden*, 70 F.4th 817 (5th Cir. 2023):

(1) Whether the district court erred by applying the administrative exhaustion requirement of *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) in a Religious Freedom Restoration Act challenge despite this Court's rejection of that precedent in *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th at 346.

(2) Whether the district court erred by disregarding Appellants' past, current, and future harms, deeming them moot, and thereby avoiding any analysis as to whether Appellants' constitutional rights were violated?

## STATEMENT OF THE CASE

Senior Airman Faith Crocker wanted nothing more than to serve her God and her country when she joined the United States Air Force. ROA.11-12. The Air Force's COVID-19 vaccine mandate put her faith to the test. ROA.12. The daughter of a Baptist minister, Senior Airman Crocker developed a sincere religious objection to taking the vaccine after prayerful reflection. ROA.11-12. The stakes were high: failure to inject the vaccine could result in "involuntary discharge, court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership position, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes." ROA.35-36.

In good faith, Senior Airman Crocker applied for a religious accommodation exemption, explaining her sincere objections and obtaining the support of her chaplain and her immediate command. ROA.14-15. It was all to no avail: Senior Airman Crocker's request was summarily denied with a form letter. ROA.15. She filed an appeal, again explaining her religious objection. *Id.* She was again denied. *Id.* At the end of the process, she was ordered by her Commanding Officer to take the vaccine within five days or face the consequences. ROA.15-16.

Little did Senior Airman Crocker know then that the religious accommodation process to which she had applied was a sham. ROA.28-33. The Department of Defense Instruction that implemented the Religious Freedom Restoration Act appeared to protect religious rights:

> In accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment.

ROA.29. But this was not how Appellees operated their system. Appellees systematically rejected 99.6% of such religious accommodations with form letters, without any concern for the particulars of any service members' beliefs, or any evaluation of the individual necessity for them to take the vaccine in light of their specific assignments. ROA.22. The few that were granted were meant to make the process look fair, but only granted to members who were also eligible for an administrative exemption (i.e., being at the end of their term of service). ROA.22.

Her appeal denied, Senior Airman Crocker was threatened with imminent punishment and separation if she did not take the vaccine. ROA.15-16. She sought counsel instead and filed suit. ROA.11-68.

**Proceedings Below**

On March 20, 2022, Senior Airman Crocker filed a complaint in this matter, then moved for a preliminary injunction. ROA.11-68. After these filings, Appellees "agreed to delay any repercussions resulting from the vaccine mandate for an unknown period of time" against Senior Airman Crocker, and the briefing schedule was stayed. ROA.148-152.

Once filed, six other servicemembers who faced similar threats of career harm and separation joined Senior Airman Crocker in a first amended complaint on May 31, 2022. ROA.227-290. These included:

- Lieutenant Colonel Christopher Duff, a highly-decorated B-52 Squadron Commander whose assignment to attend Air War College to be promotion eligible was cancelled after submitting his religious accommodation request. *Id.* at ¶¶ 29-35.

- Lieutenant Colonel Wayne Johnson, a B-52 Training Unit Instructor with seventeen years of service who would face the total loss of his retirement benefits were he separated. *Id.* at ¶¶ 36-42.

- Major David Schadwinkel, an Evaluator Weapons Systems Officer who filed both a medical and then a religious accommodation request, both of which were denied. *Id.* at ¶¶ 43-51.

- Master Sergeant Ian McHaley, an Assistant First Sergeant with an exemplary military career who had been selected to become First Sergeant for his "dedication to the Air Force and Airmen as a whole" but whose elevation and selection for First Sergeant Academy was cancelled after he submitted a religious accommodation request. *Id.* at ¶¶ 52-58.

- Staff Sergeant Mendell Potier, who deployed to Operation Iraqi Freedom, acquired two overseas achievement medals, and become a leading expert in his career field but whose upcoming deployment was cancelled because of his religious accommodation request. *Id.* at ¶¶ 59-64; ROA.502.

- Airman First Class Byron Starks who submitted a religious accommodation request that was denied, and the threat of future separation. ROA.241 at ¶¶ 65-73.

In their first amended complaint, Appellants sought six remedies:

1) A declaratory judgment that Defendants' vaccination policies challenged in this Amended Complaint violate Plaintiffs' rights under the First Amendment to the United States Constitution;

2)  A declaratory judgment that Defendants' vaccination policies challenged in this Amended Complaint violate Plaintiffs' rights under the Administrative Procedure Act;

3)  A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the vaccination policies challenged in this Amended Complaint;

4)  An order declaring unlawful and setting aside Defendants' vaccination policies;

5)  Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988;[1] and

6)  All other further relief to which Plaintiffs may be entitled.

ROA.271-272. Appellants thereafter filed a motion for a preliminary injunction to prevent harm during the pendency of the lawsuit. ROA.295-298.

Then, on June 23, 2022, Airman First Class Starks was separated from the service. ROA.365-368. His DD-214 shows that he served from July 27, 2021, to June 23, 2022, a period of 332 days. ROA.414. His separation code is noted as

---

[1] "The issue of attorneys' fees does not render an otherwise moot case a live controversy." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 835 (5th Cir. 2023). However, even if the Court finds the case moot and no exception applies, attorneys' fees will remain an unresolved issue.

"JFW," with a reentry code of "4C." – nonwaivable and ineligible for reenlistment. *Id.* A1C Starks' character of service was marked "General" – a non-honorable characterization of discharge *Id.*

Airman First Class Starks was ostensibly separated for erroneous enlistment – but he believes his separation was pretextual and based on his refusal to take the COVID-19 vaccine. ROA.365-368. After all, Air Force Instruction 36-3208, the governing regulation for "Administrative Separation of Airmen," notes both that commanders have the authority to waive discharges for erroneous enlistment and that erroneous enlistments after 180 days of service merit separation with an Honorable characterization of service. Air Force Instruction 36-3208, Administrative Separation of Airmen (July 9, 2004), https://www.mcmilitarylaw.com/documents/afi36-3208.pdf. Airman First Class Starks incorrect separation characterization will affect him for a lifetime, making him ineligible for education benefits. "To receive VA education benefits and services through the Montgomery GI Bill program or Post-9/11 GI Bill program, the Veteran's character of discharge or service must be honorable." Applying for Benefits and Your Character of Discharge, Veterans Benefits Administration, https://www.benefits.va.gov/benefits/character_of_discharge.asp.

On July 14, 2022, a court in Ohio certified a class that included the Appellants still in the service – and granted a preliminary injunction barring their punishment

or separation. ROA.327. Specifically, the District Court for the Southern District of Ohio, Western Division-Cincinnati, in *Doster, et al v. Kendall, et al*, 22-84 (S.D. Ohio 07/14/2022), issued an order certifying a class consisting of all active duty and reserve members of the US Air and Space Force who submitted a religious accommodation to the USAF from the COVD-19 vaccine requirement from September 1, 2021 to present that were confirmed as having a sincerely held religious belief and had that accommodation denied or have not had action on that request. *Id.* For this class, the district court issued a temporary restraining order prohibiting the USAF from enforcing the vaccine mandate. *Id.* The *Crocker* parties agreed that the class covered all Appellants save for Airman First Class Starks, who had already been separated from the service, and moved for a stay for the others. ROA.326-329.

On September 22, 2022, Appellees moved to dismiss the claims of Airman First Class Starks under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ROA.333-343. Appellees argued that Airman First Class Starks lacked standing because he was no longer a part of the Air Force, and that his case had not been exhausted under *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971). *Id.* Airman First Class Starks responded on November 3, 2022. ROA.362-377.

On May 30, 2023, the Appellees moved to dismiss the remaining plaintiffs and claims, arguing that the enactment of the James M. Inhofe National Defense

Authorization Act for Fiscal Year 2023 ("NDAA") and following service guidance mooted the claims. ROA.440-458. On May 4, 2023, the district court issued a memorandum ruling on the Starks motion to dismiss, agreeing with Appellees that Airman First Class Starks lacked standing because he was no longer in the Air Force. ROA.529-538. In the alternative, the district court applied the *Mindes* factors to hold that Airman First Class Starks had not exhausted administrative remedies. *Id.*

On June 22, 2023, the district court issued a memorandum order granting the Appellees' motion on the remaining claims and plaintiffs. ROA.541-558. It held that the enactment of the NDAA and the service guidance that followed "render[ed] this lawsuit moot." ROA.509. The district court entered final judgment for the Appellees, resolving all issues in dispute for all parties. ROA.540. Appellants timely appealed. ROA. 559-560.

## SUMMARY OF THE ARGUMENT

The district court erred by dismissing Airman First Class Starks' case by applying the *Mindes* standard despite this Court's rejection of the standard in *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 346 (5th Cir. 2022).

Furthermore, Appellants' valid claims are not moot because they can still obtain effectual relief: they have suffered adverse and unfavorable personnel actions with continuing impact, they are still subject to the sham religious accommodation process used for the COVID-19 vaccine for other vaccines, and they remain at threat

of future harm absent judicial remedy. Finally, mootness exceptions such as the collateral consequences, the capable of repetition yet evading review, and the voluntary cessation exceptions apply.

Determinations of mootness in other similar cases have largely been related to orders or appeals on requests for *preliminary injunctions*, not on complete dismissal of the plaintiffs' claims *on the merits* and this Court has explicitly recognized that. *See, e.g., U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 675 (5th Cir. 2023) ("the issues Plaintiffs raise can still be litigated in the district court and appealed after a final judgment, assuming they remain justiciable."). In fact, in one of the cases, the Plaintiff *joined* the Government in asserting mootness solely on the issue of the preliminary injunction and requested that the Court send the case back to the district court for a determination of the remaining issues. *Dunn v. Austin,* No. 22-15286 (9th Cir. Feb. 21, 2023) (Appellant's Supplemental Brief of February 21, 2023). The fundamental issues raised by Appellees likewise remain live and deserve an opportunity for discovery and their day in court.

## ARGUMENT

### I.     STANDARD OF REVIEW

This Court reviews dismissals pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) under a *de novo* standard. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Dismissal under 12(b)(1) is strong medicine, and so it

"should be granted *only* if it appears certain that the plaintiff *cannot prove any set of facts* in support of his claim that would entitle plaintiff to relief." *Id.* (emphasis added). When a complaint invokes, as here, federal-question jurisdiction, it can only be dismissed "'if it is not colorable'" or "'wholly insubstantial and frivolous.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161.

Under Rule 12(b)(6), a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* A court considering a 12(b)(6) motion must accept all allegations of the complaint as true and construe all facts in the light most favorable to the plaintiff. *Id.*

## II.    APPELLANT STARKS' CLAIMS ARE JUSTICIABLE BECAUSE THE RELIGIOUS FREEDOM RESTORATION ACT STATUTORILY SUPERSEDED *MINDES* ABSTENTION.

The district court erred by applying the *Mindes* abstention standard to Appellant Starks' exhaustion analysis after this Court recently dismissed it. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 346 (5th Cir. 2022). In *Navy Seals*, this Court

carefully analyzed the *Mindes* doctrine – under which "federal courts, faced with claims implicating internal military affairs, must withhold adjudication in favor of military decision-making." *Id.* at 346. The Court noted that this principle, rooted in comity, makes little sense after passage of the Religious Freedom Restoration Act:

> RFRA 'operates as a kind of super statute, displacing the normal operation of other federal laws[.]' *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754, 207 L. Ed. 2d 218 (2020) . It would not be a stretch to conclude that RFRA must also displace a judge-created abstention doctrine. '[W]hen Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears.' *Milwaukee v. Ill.*, 451 U.S. 304, 314, 101 S. Ct. 1784, 1791, 68 L. Ed. 2d 114 (1981).

*Id.* at 346.

Other courts agree: a military plaintiff need not exhaust administrative remedies before bringing a First Amendment or Religious Freedom Restoration Act (RFRA) challenge to military policies. *See, e.g., Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1226–27 (11th Cir. 2006) ("The Supreme Court and this Court have held that there is no requirement that a plaintiff exhaust his administrative remedies before filing suit under § 1983."); *Adair v. Eng.*, 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (military plaintiff need not exhaust administrative remedies to bring First Amendment Free Exercise challenge to military regulations); *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016) (military plaintiff not required to exhaust administrative remedies

to bring RFRA challenge to military policies substantially burdening his religious exercise). As noted in *Singh*, "RFRA certainly provides no textual support for the defendants' position that the plaintiff is required to exhaust administrative remedies in a court-martial proceeding before bringing his constitutional and RFRA claims before this Court." *Id.; see also Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012)("We decline, however, to read an exhaustion requirement into RFRA where the statute contains no such condition and the Supreme Court has not imposed one." (citation omitted)).

In *Downen v. Warner*, the Ninth Circuit held that a military service member need not exhaust administrative remedies to bring a constitutional challenge. 481 F.2d 642, 643 (9th Cir. 1973). Thus, the plaintiff "was not barred from the district court through her failure to exhaust administrative remedies." *Id.*

In *Dilley v. Alexander*, the court explained why military plaintiffs may bring their claims directly in federal court. 603 F.2d 914, 920 (D.C. Cir. 1979). The court reasoned that deference to the military is

> wholly inappropriate . . . when a case presents an issue that is amenable to judicial resolution. Specifically, courts have shown no hesitation to review cases in which a violation of the *Constitution, statutes, or regulations is alleged*. It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. The military departments enjoy no immunity from this proscription.

*Id.* (citations omitted) (emphasis added). Airman First Class Starks presented a plausible claim that separation was threatened because of his accommodation request, and he was then separated in "violation of the *Constitution, statutes, or regulations.*" *Id.* Indeed, service regulations were clearly violated in separating Airman First Class Starks with a non-honorable characterization of service, and military departments "enjoy no immunity" to violate their own regulations. The district court's conclusion that Appellant Starks must exhaust all administrative remedies before bringing his First Amendment and RFRA challenges in federal court "falls flat." *Adair*, 183 F. Supp. 2d at 55.

But even if the *Mindes* test still applied, Airman First Class Starks still need not exhaust administrative remedies. In *U.S. Navy SEALS 1–26*, the Court held that "Plaintiffs are exempted from exhausting their administrative remedies" because "the administrative remedy is futile and plaintiffs raise substantial constitutional claims." *Id.* at 347.

Appellant Starks raised substantial constitutional claims in the first amended complaint: that he faced ongoing and imminent punishment or separation for his religious accommodation request. ROA. 241 at ¶¶ 65-73. Lo and behold, he was subsequently separated from the military. ROA.365-368. The suspicious circumstances of that separation – in clear violation of service regulations – merited more, not less, judicial scrutiny. ROA.365-368. At the motion to dismiss stage, the

district court should have taken his allegations and their logical consequences as true and permitted the case to proceed towards discovery and trial resolution. Airman First Class Starks alleged "specific, and far from frivolous, violations of [his] free exercise rights under both the First Amendment and RFRA," so "the nature and strength of Plaintiffs' claims weigh in favor of judicial resolution" just as in *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th at 348.

## III. APPELLANTS' CLAIMS ARE NOT MOOT BECAUSE THE COURT CAN STILL GRANT "EFFECTUAL RELIEF."

"[A] case becomes moot *only when it is impossible* for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted) (emphasis added). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, L.L.C. v. Nike, Inc.*, 568 U.S. 85, 91 (2013). The Government bears the burden here of demonstrating mootness applies. *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("the Government, not petitioners, bears the burden to establish that a once-live case has become moot."). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.*

**a. The Court Can Provide "Effectual Relief" Because it Can Remedy the Past Harm to Appellants' Livelihoods and Careers.**

Appellants were injured by the Air Force's vaccination policies, and this Court is empowered to remedy those harms. Appellants missed opportunities to promote, train, and fulfill milestone positions because of this vaccine mandate. The injury was "actual": Lieutenant Colonel Duff was held back from Senior Development training that would set him up for promotion (ROA.227-290 at ¶¶ 29-35), Master Sergeant McHaley was denied promotion to First Sergeant despite selection from his superiors (*Id.* at ¶¶ 52-58), Staff Sergeant Potier was denied an anticipated deployment and the pay that would come from it (*Id.* at ¶¶ 59-64; ROA.502), and Airman First Class Byron Starks was separated from the service (ROA.241 at ¶¶ 65-73; ROA.365-368). As a result of this discrimination, Appellants are behind their peers because of the Air Force's unlawful religious discrimination, with enduring implications for their careers. The Air Force has never stated in any post-repeal policy that they intend to rectify this harm caused by their illegal policies and religious discrimination.

While the Air Force claims that vaccination status shall no longer "be a consideration in assessing individual Service member suitability for deployment or other operational assignments," there is no policy stating that vaccination status

cannot be considered in promotions and non-operational assignments, allowing for continued consequential discrimination.

Further, though the Air Force claims it has or will remove all "adverse information" in servicemember files, the Air Force has a different view of "adverse" than Appellees. Plaintiffs in similar cases have alleged that the Air Force actually maintains a database of "every vaccine objector." *Frank Kendall, Sec'y of the Air Force v. Hunter Doster*, No. 23-154, 2023 U.S. S. Ct. Briefs LEXIS 3186 (Oct. 18, 2023) (Brief in Opposition, *citing* Resp. Mot. Dismiss Mootness with Declarations, Doc. 112). Such a database would empower senior Air Force leaders to continue to punish religious objectors to their forced vaccine regime such as Appellees. No new Air Force policy addresses this harm.

The Court is empowered to enforce the Religious Freedom Restoration Act against military policies that violate it. *See, e.g.*, *Rigdon v. Perry*, 962 F. Supp. 150 (D.D.C. 1997) (finding Department of Defense directive violated Religious Freedom Restoration Act by restricting the speech of military chaplains). In *Rigdon*, a military ban on chaplains preaching about pending federal legislation was challenged by a Catholic priest and an Orthodox Jewish rabbi. They filed a lawsuit on the grounds of the First Amendment and the Religious Freedom Restoration Act and prevailed against the military policies: the military could not prohibit chaplains from following the directives of their religious leaders.

Multiple courts did so in the precise context of the COVID-19 military vaccine mandates. *See*, *e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022); *Air Force Officer v. Austin*, 588 F. Supp. 3d 1338 (M.D. Ga. 2022). The Court is likewise empowered to remedy the harms left by this policy: religious accommodation policies for vaccines that demonstrably fail to comply with the Religious Freedom Restoration Act can be enjoined.

**b. The Court Can Provide "Effectual Relief" by Declaring Unconstitutional Appellees' "Vaccination Policies," Including the Sham Religious Accommodation Process that Continues to Harm Appellants.**

The Appellees' "vaccination policies" include a sham religious accommodation process for vaccinations that continues to apply to vaccinations and harms Appellants. Appellants' allegations regarding this process included that:

- The Air Force's religious accommodation process permits the Air Force to forego individualized assessment and to satisfy the compelling interest requirement through generic determinations.

- The Air Force's religious accommodation process used boilerplate statements to suffice for demonstrating that the Air Force's action were the least restrictive means.

- The Air Force's religious accommodation process permits the Air Force to discriminate against airmen who submit a request and to apply

coercive tactics in order to pressure the servicemember to forego their beliefs.

- The Air Force's religious accommodation process permits Air Force leadership to dictate denial of all requests, no matter the individual circumstances of the requester.

This system was not much different than that analyzed and found woefully wanting by this Court before. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 341 (5th Cir. 2022) (describing Navy's insufficient process to adjudicate religious accommodation requests, which did not even include an "approval template." While the passage of the NDAA arguably removed the "axe" of the COVID-19 vaccine, the axeman still stands nearby: each of these airmen still remains subject to a flawed system that the Air Force refuses to repudiate. It is this overarching system, not just its application during the COVID-19 crisis, that Appellants challenge. *See, e.g., id*. at 339 ("But [the Navy] has not accommodated *any* religious objection to *any* vaccine in seven years, preventing those seeking such accommodations from even being considered for medical waivers.").

In *Singh v. Berger*, the D.C. Circuit Court ordered the Marine Corps to allow bearded Sikh religious adherents to enlist despite a military policy that prohibited religious exemptions for beards and hair during basic training. *Singh v. Berger*, 56

F.4th 88 (D.C. Cir. 2022). Three devout Sikhs and potential Marine Corps recruits were faced with a dilemma: to serve in the Marines, they were told they must choose between their religious obligations to maintain beards and turbans and their desire to serve in the military. *Id.* The Marine Corps allowed beards for medical reasons but not for religious reasons. *Id.* at 99. After a Religious Freedom Restoration Act and Constitutional challenge, the U.S. Court of Appeals for the District of Columbia, granted the Sikhs a preliminary injunction. *Id.* at 110. The court ultimately "remanded to the District Court for the prompt entry of a preliminary injunction requiring the Marine Corps to allow [Appellants] to enlist without shaving their heads or beards…" *Singh v. Berger*, No. 22-5234, 2022 U.S. App. LEXIS 35598, at *3 (D.C. Cir. Dec. 23, 2022). It is difficult to envision intruding more into a military service's operations than ordering specific individuals to be allowed to enlist or dictate training grooming policy – but the Religious Freedom Restoration Act broadly empowers courts to right constitutional wrongs in the religious liberty arena.

The potential for future punishment of Appellants is not undermined by any of the Defense Department memorandums to which the district court pointed. *Bazzrea v. Mayorkas*, relied on heavily by the district court, involved only Coast Guard policies and did not analyze the policies of the Air Force. No. 3:22-cv-265, 2023 U.S. Dist. LEXIS 101876 (S.D. Tex. June 12, 2023). The potential for future

punishment of Guardsmen figured prominently in the opinion of *Abbott v. Biden*, which determined that Texas National Guardsman's challenge to the COVID-19 vaccine mandate policy was not moot because they could face future punishments for their refusal to take the vaccine. *Abbott*, 70 F.4th at 824-25.

Congressional testimony of administration officials on this matter is not cause for comfort for Appellants. "Cisneros said that individuals who had *pending exemption requests* would have their cases cleared and settled. But individuals who simply refused the vaccines, even *after repeated warnings*, could still run afoul of other regulations that may warrant additional punishment." Leo Shane III, *Troops Who Refused COVID Vaccines Still Could Face Punishment*, MILITARY TIMES (Feb. 28, 2023), https://www.militarytimes.com/news/coronavirus/2023/02/28/troops-who-refused-covid-vaccines-still-could-face-punishment/ (emphasis added). Appellees such as Senior Airman Crocker no longer had pending exemption requests – her requests and appeals had been rejected – and she had been ordered to take the vaccine. ROA.15-16. She refused. *Id.* The potential for future punishment figured prominently in this Court's analysis of mootness with potential punishment for Guardsmen in *Abbott,* 70 F.4th at 825. Although Abbott differentiated those who had filed religious accommodation requests in the past, there remains a five-year statute of limitations for failure to follow orders that senior administration officials

28

have indicated in sworn congressional testimony that they may use. 10 U.S. Code §
843.

This Court's finding that: (1) Appellees' actions violated the Religious
Freedom Restoration Act and other applicable laws; and that (2) any adverse actions
suffered by Appellants or class members for non-compliance (e.g., discharge or
denial of pay or benefits to which they were entitled) were wrongful itself could
provide effectual relief. The district court maintained that it could do nothing about
Airman First Class Starks' separation, Staff Sergeant Potier's backpay, or Master
Sergeant McHaley's promotion. ROA.529-538; ROA.541-558. While Appellants
disagree that the court was powerless, even if correct, under principles of res judicata
and/or collateral estoppel, declaratory relief can serve as a precursor to monetary
relief against the Appellees for backpay in the Court of Federal Claims, which
precludes this case from being moot. *See Doster v. Kendall*, 54 F.4th 398, 426 (6th
Cir. 2022).

## IV.   MOOTNESS EXCEPTIONS APPLY

### a.   The "Collateral Consequences" Exception Applies.

Under the "collateral consequences" exception, when the plaintiff's primary
injury has ceased, the case is not moot if the challenged conduct continues to cause
other harm that the court is capable of remedying. *Sibron v. New York*, 392 U.S. 40,

53-59 (1968). A continuing collateral consequence is one that provides the plaintiff with a "concrete interest" in the case and for which "effective relief" is available. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984). "In instances where a litigant's primary stake in the outcome becomes moot — typically in habeas cases where the petitioner is released while the case is still pending — federal courts will allow the suit to proceed only where some 'collateral consequence' of the litigation's outcome persists." *Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir. 2004) (applying in the deportation context). "[I]t frequently has been applied in the civil context. Wright et al., § 3533.3; Moore et al., § 101.00[3], 101-190." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998).

In *Foster v. NFN Warden*, the Court analyzed whether the "loss of VA benefits due to [Foster's] violation of the condition challenged in his petition may be an ongoing collateral consequence that prevents this case from being moot." 31 F.4th 351, 355 (5th Cir. 2022). The Court concluded that they were and remanded to the district court for further development of the factual record.

Here, Appellants' primary injury is the existence of a discriminatory accommodation process, the punishments inflicted on those refusing the vaccine for religious reasons, and for those pushed out like Airman First Class Starks, any less-than-honorable discharges. Even assuming all these primary harms were remedied, which they were not, collateral consequences remain.

The Air Force is purportedly maintaining a database to potentially take such action in the future. This increases the threat to Appellants, who received orders to vaccinate, and they did not comply. Each remains subject to criminal prosecution at any time during the full five-year statute of limitations. 10 U.S.C. § 843. On this ground alone, the appeal is not moot. *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) (violation of repealed statute does not foreclose relief if the statute was violated); *Bowman v. Schwarzenegger*, No. CIV S-07-2164 FCD KJM P, 2009 U.S. Dist. LEXIS 24678 (E.D. Cal. Mar. 23, 2009) (same); *Dean Foods Co. v. Tracy*, 990 F. Supp. 646 (W.D. Wis. 1997) (claim not moot where enforcement possible); *Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016) (same); *Ctr. for Individual Freedom v. Tennant*, 706 F.3d 270, 293 (4th Cir. 2013) (possibility of enforcement for past violation rendered matter not moot); *Ramsek v. Beshear*, 989 F.3d 494, 500 (6th Cir. 2021) (no mootness until criminal statute of limitations runs).

And finally, Airman First Class Starks separation from the military with the incorrect characterization of service will have lifelong consequences on his VA benefits and deprive him of the GI Bill that would enable his education. ROA.503. Just as in *Foster*, Appellants deserved the opportunity to develop the record and have their case heard.

**b. The Appellees' Challenged Conduct is Capable of Repetition Yet Evades Review.**

"The capable of repetition yet evading review exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). Both are present here.

First, given the rapidly changing COVID-19 landscape and the changes in policy throughout the DoD, the duration of the Vaccine Mandate was likely going to be "too short to be fully litigated prior to cessation or expiration." *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (two years is too short); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (12 months is too short); *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774 (1978) (18 months is too short); *S. Pac. Terminal Co. v. Interstate Commerce Com.*, 219 U.S. 498, 515 (1911) (two years is too short); *Roe v. Wade*, 93 S. Ct. 705 (1973) (266 days is too short). Under the first element, a case evades review if its duration is too short to receive "complete judicial review," including review by the Supreme Court. *First Nat'l Bank*, 435 U.S. at 774.

When analyzing the second element, courts are concerned with whether the conduct was "capable of repetition and not … whether the claimant had

demonstrated that a reoccurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). Plaintiffs just need to show "a reasonable expectation" that the challenged action will reoccur and do not need to demonstrate with "mathematical precision" that they will be subject to the same illegal conduct. *Id.* In *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020), the Supreme Court held that a church's First Amendment challenge to New York's COVID-19 lockdown orders was not moot because the lockdown orders were capable of repetition, yet evading review. The church "remain[ed] under a constant threat" the government would reinstitute a lockdown in its area. *Id.* at 68. Because the challenged action was too short in duration to be fully litigated prior to cessation, and there was a reasonable expectation the church would be subject to the same action in the future, the case was not moot. *Id.*

Likewise, here Appellants have a reasonable expectation the challenged action will recur. The COVID-19 vaccine mandate revealed the unconstitutionality in practice of the entire religious accommodation process in the military. The NDAA only forced the Government to rescind their COVID-19 actions – but absent judicial intervention – this is the same system they will use to impose additional experimental vaccines going forward on Appellants and other servicemembers.

Furthermore, the Government continues to claim the power to make decisions about unvaccinated airmen that will unlawfully harm their careers, while providing

no assurances that they will not continue to violate the Religious Freedom Restoration Act. And the Government also claims the power to punish past objectors because the order to vaccinate, allegedly, was "lawful." The capable of repetition exception is met.

### c. The Voluntary Cessation Exception Applies.[2]

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000). "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *Id.* (citing *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982)).

Courts consider the totality of the circumstances surrounding the voluntary cessation, including the way the cessation was executed. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019). Where, as here, "the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.* Steps taken during litigation to remove and/or temporarily discontinue certain, but not all, adverse actions are entitled to no weight whatsoever. *See A. Philip Randolph Inst. v.*

---

[2] Appellants raise this argument in order to preserve it.

*Husted*, 838 F.3d 699, 713 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1833 (2018); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342-43 (6th Cir. 2007).

Under a totality of the circumstances, Appellees' actions in declining to confirm whether they will reimpose a vaccine mandate – and in fact "vigorously defend[ing]" the legality of its approach – satisfies for the voluntary cessation exception. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). In such circumstances, courts do not dismiss a case as moot. *See City of Mesquite v.*, 455 U.S. at 288-89.

## CONCLUSION

For the foregoing reasons the judgment of the district court should be reversed and remanded for trial on the merits of Appellants' claims.

Respectfully submitted,

s/ *James Baehr*
Sarah Harbison
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
james@pelicaninstitute.org
sarah@pelicaninstitute.org

Dated: November 16, 2023

*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Plaintiff-Appellant's

Opening Brief using the court's CM/ECF system which will automatically generate

and send by email a Notice of Docket Activity to registered attorneys currently

participating in this case, constituting service on those attorneys.

_s/ James Baehr_

Dated: November 16, 2023                James Baehr

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 7478 words, even including the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word for Mac in Times New Roman 14-point font.

*s/ James Baehr*

Dated: November 16, 2023          James Baehr