**No. 23-30497**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

FAITH CROCKER, DAVID J. SCHADWINKEL, IAN R. MCHALEY,
CHRISTOPHER F. DUFF, BYRON O. STARKS, JR.,
WAYNE E. JOHNSON, MENDELL L. POTIER

*Plaintiffs-Appellants*,

*v.*

LLOYD AUSTIN; UNITED STATES DEPARTMENT OF DEFENSE; FRANK
KENDALL, III; ROBERT I. MILLER; RICHARD W. SCOBEE

*Defendants-Appellees.*

On appeal from the United States District Court
for the Western District of Louisiana, No. 5:22-CV-757

**Reply Brief for Plaintiffs-Appellants**

James Baehr
Sarah Harbison
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
sarah@pelicaninstitute.org
james@pelicaninstitute.org

February 21, 2024                    *Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES....................................................................................... i

SUMMARY OF THE ARGUMENT ......................................................................... 1

ARGUMENT ............................................................................................................ 3

    I.  APPELLANTS' CLAIMS ARE NOT MOOT BECAUSE THE COURT CAN STILL GRANT "EFFECTUAL RELIEF" BY HOLDING THE BROADER RELIGIOUS ACCOMMODATIONS PROCESS UNCONSTITUTIONAL. ...................................... 3

    II.  APPELLANTS' CLAIMS ARE NOT MOOT BECAUSE EXCEPTIONS TO MOOTNESS SUCH AS "COLLATERAL CONSEQUENCES" APPLY AND INCLUDE REPUTATIONAL HARM............................................................ 9

    III. APPELLANT STARKS HAS STANDING BECAUSE THE RELIGIOUS FREEDOM RESTORATION ACT DOES NOT REQUIRE ADMINISTRATIVE EXHAUSTION WHEN VIOLATIONS OF RELIGIOUS EXERCISE ARE AT STAKE, NOR IS EXHAUSTION REQUIRED UNDER WELL-RECOGNIZED EXCEPTIONS. ........ 10

CONCLUSION........................................................................................................ 16

CERTIFICATE OF SERVICE............................................................................... 17

CERTIFICATE OF COMPLIANCE ..................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Chafin v. Chafin*, 568 U.S. 165 (2013) .................................................................. 3

*Connell v. Shoemaker*, 555 F.2d 483 (5th Cir. 1977) ......................................... 3, 4, 9

*Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022) ....................................... 5, 6, 12, 13

*Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, (1990) ...................................................................................................................... 13

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n.9, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979) ............................................................................................................... 12

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) ................... 11

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) ........................................ 13

*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) ............................................... 15, 16

*Robert v. Austin*, 72 F.4th 1160 (10th Cir. 2023) ................................................... 15

*Schelske v. Austin*, No. 6:22-CV-049-H, 2023 U.S. Dist. LEXIS 163101 (N.D. Tex. Sep. 14, 2023) ................................................................................................................. passim

*SEALs v. Austin*, 594 F. Supp. 3d 767 (N.D. Tex. 2022) ...................................... 6, 7

*Sherbert v. Verner*, 374 U.S. 398 (1963) .............................................................. 13

*State of Missouri v. Biden*, No. 23-30445, slip op. at 18-19 (5th Cir. Oct. 3, 2023) ................... 8

*U.S. Navy SEALs 1–26 v. Austin*, No. 4:21-cv-01236-O (N.D. Tex. Feb. 14, 2024) ............ 1, 5, 6

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) ................................. 16

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022) ........................................................ 3

**Statutes**

42 U.S.C. § 1997e(a) ............................................................................................... 12

Prison Litigation Reform Act of 1995. 42 U.S.C. § 2000bb—2(e) ....................... 11, 12

Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) ............................... 12

## SUMMARY OF THE ARGUMENT

Appellants' claims are not moot because a court can still offer effectual relief by addressing Appellants' allegations on the constitutionality of the broader military religious accommodations process, as the Northern District of Texas recently held. *U.S. Navy SEALs 1–26 v. Austin*, No. 4:21-cv-01236-O (N.D. Tex. Feb. 14, 2024) (hereafter *Navy SEALs*). A case is only moot if the court cannot provide any relief to the prevailing party – the availability of even a partial remedy keeps the case alive. The Appellants' constitutional challenge to broader religious accommodation policies that systematically undermine their rights warrants judicial intervention that would provide relief.

These ongoing harms include indefinite delays in handling religious accommodation requests, standardized rejections, discrimination, and coercion against service members, which indicate a systemic issue beyond the specific context of COVID-19 vaccine mandates. These practices have led to a nearly non-existent approval rate of religious accommodation requests, in contrast to the approval of other types of waivers, highlighting a process rife with discrimination. The Northern District of Texas's ruling in a similar case against the military's religious accommodation process supports Appellants' position that allegations of ongoing harm from this broader process are still very much at issue.

1

Furthermore, mootness exceptions such as collateral consequences and reputational harm provide additional grounds to reject a determination of mootness. The Appellants face ongoing repercussions, including the maintenance of databases for future action against them, the potential for future prosecution, and life-altering consequences from improper separation and service characterization. These factors, combined with the systematic denial of religious accommodations, present a controversy warranting judicial review.

Finally, Appellant Starks has standing to bring his case without needing to exhaust administrative remedies, based on the Religious Freedom Restoration Act (RFRA) and exceptions to the exhaustion requirement in military contexts. Traditional abstention standards do not apply when RFRA is at stake, and the Northern District of Texas recently rejected just such a mootness challenge to a separated service member. *Schelske v. Austin*, No. 6:22-CV-049-H, 2023 U.S. Dist. LEXIS 163101, at *93 (N.D. Tex. Sep. 14, 2023). The case should be remanded to consider Appellants' claims in the first instance.

## ARGUMENT

I.    **APPELLANTS' CLAIMS ARE NOT MOOT BECAUSE THE COURT CAN STILL GRANT "EFFECTUAL RELIEF" BY HOLDING THE BROADER RELIGIOUS ACCOMMODATIONS PROCESS UNCONSTITUTIONAL.**

"[A] case becomes moot *only when it is impossible* for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022). The Government bears the burden of demonstrating that this once live case is now moot. *Id.* ("the Government, not petitioners, bears the burden to establish that a once-live case has become moot.").

"[E]ven the availability of a partial remedy is sufficient to prevent a case from being moot." *Chafin*, 568 U.S. at 177 (cleaned up). "Since it is possible for a 'live' controversy to remain where some but not all issues in a case have become moot . . . the question of the mootness *vel non* of appellants' claim . . . becomes whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) (cleaned up).

Resolution of one part of a case – for example, the lifting of a regulatory restriction – does not completely eliminate the controversy between parties when broader policies are at stake. *Connell* is instructive. In that case, a commanding officer prohibited service members from renting property from property owners accused of racial discrimination in leasing. *Id.* at 485. The rental property owner brought suit, alleging in part "that the Army's refusal to grant appellants a formal hearing and its refusal to confront appellants with the evidence and witnesses against them violated their due process rights." *Id.* Subsequently, the commanding officer lifted the sanction and the district court determined the case was moot. Not so, said the Fifth Circuit: the property owners' contention that the Army's process had "deprived them of constitutional rights without due process of law" when their "reputation or good name" were at stake still qualified as a live case or controversy. *Id.* at 487.

The Appellants make such an allegation about a broader unconstitutional harm that persists. The Appellants contend that the Air Force's "vaccination policies" and the purportedly superficial religious accommodation process persistently undermine their rights through a process that allows for generic determinations and boilerplate justifications, effectively sidelining individual religious accommodation requests. This flawed system perpetuates a discriminatory

framework against religious service members seeking exemptions, thereby warranting judicial scrutiny and intervention.

Several days ago, the Northern District of Texas held that a highly similar case challenging the military's religious accommodation process on behalf of Navy SEALs was not moot. *Navy SEALs*. The court's order rejected identical arguments to those made by defendants here and ruled that "Plaintiffs' claims arising out of the broader vaccine accommodations policy may proceed." *Id.* at 2.

The court first distinguished the other military vaccine cases that have found mootness – and that Appellees rely upon in this case. *Id.* at 4-5. Those cases – including the Supreme Court's order regarding vacatur of the Sixth Circuit's preliminary injunction in *Doster v. Kendall*, 54 F.4th 398, 414 (6th Cir. 2022) – were all "readily" distinguishable from the SEALs complaint because "live harm remains due to allegations regarding the Navy's *broader religious accommodations process*." *Id.* at 5 (emphasis added).

The court held that the military's operation of this broader religious accommodations process constitutes cognizable "ongoing harm" – harm that was revealed by the application of the process to the COVID-19 vaccine – but that continue beyond the COVID-19 vaccine. *Id.* at 7.

These problems include: (1) indefinitely sitting on requests for religious accommodation; (2) foregoing the required individualized assessments,

citing standardized policy memos (even if outdated) to satisfy the compelling interest requirement, and using boilerplate statements to suffice for demonstrating that the Navy's action is the least restrictive means; (3) permitting discrimination and coercive tactics to pressure servicemembers to forego their religious beliefs; (4) authorizing Navy leadership to dictate denial of all requests without considering the individual circumstances of the requests and current conditions or facts; (5) permitting coercion and retaliation against commanding officers who recommend approval of religious accommodations despite the chain of command's desire that requests be denied; and (6) prohibiting resubmission of denied requests and updates to pending requests due to a change of job, location, or other relevant circumstances.

*Id.* at 7-8.

The process led to certain rejection of religious accommodation requests. *U.S. Navy SEALS 1-26 v. Austin*, No. 4:21-cv-01236-0, 2022 U.S. Dist. LEXIS 65937, 2022 WL 1025144, *5 (N.D. Tex. Mar. 28, 2022) ("This amounts to only 1% of religious accommodation requests being granted. It is hard to imagine a more consistent display of discrimination.") (cleaned up). These uniform rejections of religious requests had to be juxtaposed against thousands of grants of waivers on other grounds. *SEALs v. Austin*, 594 F. Supp. 3d 767, 787 (N.D. Tex. 2022) ("But the Navy's willingness to grant hundreds of permanent and temporary medical exemptions belies this insistence on complete uniformity and widespread vaccination. It is illogical . . . that Plaintiffs' religious-based refusal to take a COVID-19 vaccine would seriously impede military function when the Navy has

over 5,000 servicemembers still on duty who are just as unvaccinated as the Plaintiffs.") (cleaned up).

The Northern District of Texas distinguished this case from others like it because the Navy SEALs had alleged these harms regarding the broader religious accommodation system in their operative complaint. *Id.* at 9. The Navy SEALs referenced these broader policies throughout and devoted an entire section to discussing it – a section that does not mention the specific COVID-19 vaccine mandate at all. *Id.* at 9 n.24.

The same logic applies here. Appellants amended complaint raised the same issues with the military's application of the broader religious accommodation process as the Navy SEALs complaint did. ROA.22; ROA.28-33. Appellants alleged that 99% of religious accommodation requests were denied while military and administrative requests were granted. ROA.179. Appellants devoted an entire section of the amended complaint to discussing the broader religious accommodation process. ROA.187-188, ¶¶ 139-143. And Appellants' prayer for relief called for a judgment on the "vaccination policies" – the religious accommodation process for vaccinations writ large – not simply those related to COVID-19. ROA.271-272.

This discriminatory system perpetuates current and ongoing cognizable harm, such as discouraging Appellants from using the religious accommodation policy in

the future based on their substantiated fear that this process is a sham. *Cf. State of Missouri v. Biden*, No. 23-30445, slip op. at 18-19 (5th Cir. Oct. 3, 2023). In *State of Missouri*, this Court found continuing injury to plaintiffs persisted because of self-censorship and their continued use of social media even though social media companies had discontinued the specific COVID-19 related "misinformation" policies at issue. *Id.* While such fear of future harm should not be "imaginary or wholly speculative," the fears motivating this self-censorship

> are grounded in the very real censorship injuries they have previously suffered to their speech on social media, which are "evidence of the likelihood of a future injury." Supported by this evidence, the Individual Plaintiffs' self censorship is a cognizable, ongoing harm resulting from their past censorship injuries, and therefore constitutes injury-in-fact upon which those Plaintiffs may pursue injunctive relief.

*Id.* at 19 (internal citations omitted). The fears of Appellants are just as legitimate – grounded in their personal experience with a process that failed them – and this "evidence of the likelihood of future injury" is a cognizable, ongoing harm and an injury-in-fact sufficient to defeat a claim of mootness.

These ongoing injuries, coupled with the unremedied past harms outlined extensively in Appellants' opening brief, provide this Court multiple grounds on which to determine that this case is not moot.

## II. APPELLANTS' CLAIMS ARE NOT MOOT BECAUSE EXCEPTIONS TO MOOTNESS SUCH AS "COLLATERAL CONSEQUENCES" APPLY AND INCLUDE REPUTATIONAL HARM.

Reputational harm qualifies as a "collateral consequence" to satisfy for a mootness exception. In *Connell*, when the military's prohibition on its personnel renting residential property owned or managed by the appellants due to discrimination allegations lifted, consequences remained because "the imputation of bigotry implicit in the Army's widely publicized sanctions against appellants could not but harm their reputations and, concomitantly, their livelihoods with clientele both black and white." 555 F.2d at 487. The Court's logic in *Connell* seemed to be that the collateral consequence of stigma with reputational impact could be redressed by a judicial repudiation of the Army's lack of due process, defeating mootness. Similarly, a judicial repudiation of the "Defendants' vaccine policies" – the sham religious accommodation process – could provide Appellants a measure of reputational relief (alongside the restoration of an unconstitutional process).

Appellees complain that the other collateral consequences identified by Appellants, including the maintenance of a database for future action and the possibility of future prosecution, are not sufficiently developed factually. But Appellants' opportunity to develop the facts was cut short by Appellees' motions to dismiss despite the fact that the district court should have viewed Appellants'

allegations as true and in their most favorable light before dismissal. Furthermore, the collateral consequences to Appellant Starks, who faces lifelong stigma due to the separation from the military with an incorrect characterization of service, remain undisputed since the government incorrectly assumes his case is moot (addressed more fully in the section below). This incorrect characterization adversely affects eligibility for veterans' benefits and access to the GI Bill, hindering his dreams to pursue an education. These collateral consequences provide Appellant Starks and all of the Appellants with a concrete interest in the outcome of the case and indicate that effective relief is still achievable through the courts.

### III.    APPELLANT STARKS HAS STANDING BECAUSE THE RELIGIOUS FREEDOM RESTORATION ACT DOES NOT REQUIRE ADMINISTRATIVE EXHAUSTION WHEN VIOLATIONS OF RELIGIOUS EXERCISE ARE AT STAKE, NOR IS EXHAUSTION REQUIRED UNDER WELL-RECOGNIZED EXCEPTIONS.

While general challenges to reinstatement or promotion in the military context require administrative exhaustion, challenges based on the Religious Freedom Restoration Act do not. *Schelske*, U.S. Dist. LEXIS 163101 at *93. Appellant Starks need not petition the Air Force Discharge Review Board before seeking the protection of his religious liberties in court. *Id.* The "text, structure, and historical context" of RFRA make this clear. *Id.* at 93.

Textually, RFRA permits direct judicial resolution of Appellant Starks' claim. RFRA provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim . . . in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). "[T]he term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States," so it includes the military-official Appellees. *See id.* § 2000bb-2(1). And conduct covered under RFRA includes "all Federal law, and the implementation of that law, whether statutory or otherwise." RFRA thus reaches the actions taken by Appellees to enforce the former vaccine mandate, including the involuntary separation of Appellant Starks. *See id.* § 2000bb-3(a).

Two of RFRA's structural characteristics and context provide further guidance. First, in RFRA's "Judicial relief" section, Congress provided that "[s]tanding to assert a claim or defense under [RFRA] shall be governed by the general rules of standing under article III of the Constitution." Id. § 2000bb-1(c). "Congress's directive seems clear on its face—the text expressly tells [courts] to apply the rules of standing under Article III and makes no mention of prudential (non-Article III) standing rules." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1155 (10th Cir. 2013) (Gorsuch, J., concurring). By specifically invoking Article III's limits, the text thus "suggests that courts should not adopt other judge-

made limits to 'govern' a RFRA claim." *Doster v. Kendall*, 54 F.4th 398, 414 (6th Cir. 2022) (*citing Hobby Lobby Stores, Inc.*, 723 F.3d at 1155 (Gorsuch, J., concurring)); *see also Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n.9, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979) ("If, as is demonstrated in the text, Congress intended standing . . . to extend to the full limits of Art. III, the normal prudential rules do not apply . . . .").

Second, RFRA's sister statute, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), expressly adopts the exhaustion requirements set forth in the Prison Litigation Reform Act of 1995. 42 U.S.C. § 2000cc—2(e); see 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Where Congress has expressly required exhaustion in one part of a statutory scheme, "[b]asic interpretive rules" counsel against reading in an "implied military-exhaustion requirement" in another part. *Doster*, 54 F.4th at 414 (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 509-12 (1982). Given that RLUIPA's text demonstrates that Congress contemplated exhaustion, the canon of *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of another") suggests that "Congress considered the unnamed possibility and meant to say no to

it." *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).

Finally, the historical context preceding RFRA's enactment confirms this conclusion. After the Supreme Court decided *Sherbert v. Verner*, 374 U.S. 398 (1963), plaintiffs "could use 42 U.S.C. § 1983—the cause of action that permits suits against state actors for constitutional violations—to challenge" neutral state laws that "substantially burden[ed] religion" and "flunked [strict] scrutiny." *Doster*, 54 F.4th at 414. Later, in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, (1990), the Supreme Court departed from strict scrutiny when analyzing facially neutral laws burdening religion. *Doster*, 54 F.4th at 414. However, in enacting RFRA, Congress "sought 'to restore' *Sherbert's* strict-scrutiny test." *Id.* (citing 42 U.S.C. § 2000bb(a)(4), (b)(1)). A "pre-*Smith* free-exercise claim under § 1983" thus "represents the most analogous cause of action to RFRA." *Id.* And just as "§ 1983 did not require a plaintiff to exhaust a free-exercise claim with a state actor in order to sue that actor," RFRA does not demand exhaustion, either. *Id.* at 415 (citing *Patsy*, 457 U.S. at 516).

The court in *Schelske v. Austin* applied this exact analysis to a highly similar claim in that case – a plaintiff who alleged he was separated from the military with a non-honorable discharge because of his refusal to take the COVID-19 vaccine. *Schelske*, 2023 U.S. Dist. LEXIS 163101 at * 93. The court held that the discharged

plaintiff had standing to directly challenge his discharge under RFRA in court without administrative exhaustion – and even to pursue backpay as a form of equitable relief. *Id.*

The court there also rejected, in the alternative, an administrative exhaustion requirement through the Fifth Circuit's recognized exceptions "applicable to military discharge actions." *Id.* at * 100. In particular, exhaustion is not required where: (1) the administrative process would fail to "provide a genuine opportunity for adequate relief"; (2) the plaintiff "may suffer irreparable injury if he is compelled to pursue his administrative remedies"; (3) exhaustion of the administrative process "would be futile"; or (4) "the plaintiff has raised a substantial constitutional question." *Id.* The court held that pursuing the administrative process would cause the plaintiff to suffer "irreparable injury." *Id.* at *101 (citing *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) for the proposition that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Furthermore, the plaintiff had raised "a substantial question related to religious rights—namely, whether the defendants

have violated his free-exercise rights under RFRA." *Id.* at *102. Both provided independent grounds to except administrative exhaustion.[1]

So too for Appellant Starks: his invocation of RFRA expressly eliminates the administrative exhaustion requirement and well recognized exceptions to military administrative exhaustion apply here as well.

Appellees rely on *Robert* for the proposition that military separation ends the matter, but *Robert* is distinguishable. *See Robert v. Austin*, 72 F.4th 1160 (10th Cir. 2023). First, there is nothing in *Robert* that indicates that the service member separated was separated in whole or in part because of his religiously based vaccine objection, thus invoking RFRA. *Id.* at 1164. Second, the complaint in *Robert* made narrower allegations and had a narrower prayer for relief than Appellants' amended complaint, specifically identifying "inoculation with COVID-19 vaccines" as the harm complained of. *Id*.

As outlined more fully in Appellants' opening brief, the district court's decision to apply the *Mindes* abstention standard to Appellant Starks' case was fundamentally flawed, especially in light of the Fifth Circuit's recent dismissal of

---

[1] The *Schelske* court also held that a request for backpay for reinstatement was not beyond the power of the court because "the Fifth Circuit has made clear that backpay is an integral part of the equitable remedy of injunctive reinstatement." *Id.* at *109 (citing *Harkless v. Sweeny Indep. Sch. Dist.*, 427 F.2d 319 (5th Cir. 1970)).

this standard. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022). The *Mindes* standard, which traditionally urged federal courts to defer to military decision-making on internal matters, is incompatible with a proper interpretation of RFRA. *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). The district court's insistence on administrative remedy exhaustion contradicts established legal principles and fails to recognize the significant constitutional and statutory claims at stake. The peculiar circumstances of Starks' separation, which contravened service regulations and violated his rights under the First Amendment and RFRA, warranted greater judicial scrutiny rather than abrupt dismissal. The case should be remanded to consider Appellant Starks' claim in the first instance.

## CONCLUSION

For the foregoing reasons the judgment of the district court should be reversed and remanded for trial on the merits of Appellants' claims.

Respectfully submitted,

s/ *James Baehr*
Sarah Harbison
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
james@pelicaninstitute.org
sarah@pelicaninstitute.org

Dated: February 21, 2024

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Plaintiff-Appellant's Opening Brief using the court's CM/ECF system which will automatically generate and send by email a Notice of Docket Activity to registered attorneys currently participating in this case, constituting service on those attorneys.

_s/ James Baehr_

Dated: February 21, 2024          James Baehr

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 3,995 words, even including the parts of the brief exempted by the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word for Mac in Times New Roman 14-point font.

*s/ James Baehr*

Dated: February 21, 2024       James Baehr